UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SARAH PICKENS, *et al.* | Case No. 6:23-cv-01718-MTK |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| PEACEHEALTH, a corporation | |
| Defendant | |

**KASUBHAI,** United States District Judge:

Plaintiffs filed this action against their former employer PeaceHealth alleging federal and state claims of employment discrimination. Before the Court are Defendant's "Motion for Sanctions Under 28 U.S.C. § 1927 and This Court's Inherent Authority" (ECF No. 55) and Defendant's "Motion for Rule 11 Sanctions" (ECF No. 62). For the reasons below, Defendant's motions are granted.

## BACKGROUND

### A. Initial Complaints

Plaintiffs' counsel Paul and Caroline Janzen ("the Janzens") filed this action initially on behalf of three Plaintiffs on November 20, 2023. ECF No. 1. In general terms, the Complaint alleges that each Plaintiff, while employed by Defendant, was placed on unpaid leave based on Defendant's COVID-19 vaccine mandate despite Defendant having granted them religious exemptions.

Page 1 — OPINION AND ORDER

On February 29, 2024, Mr. Lauritzen, who was not yet a named plaintiff in this case, received an email from Ms. Janzen indicating that she was filing an amended complaint and requesting documentation and information for that complaint. Suppl. Decl. of Kelly S. Riggs in Supp. of Def.'s Mot. for Rule 11 Sanctions ("Riggs Decl. II"), Ex. 2 at 14, ECF No. 73.[1] Mr. Lauritzen responded that he had uploaded the requested information to a Dropbox folder "over two years ago," and requested an update on his case. *Id.* at 14-15. Ms. Janzen directed Mr. Lauritzen to make an appointment for an update, and Mr. Lauritzen requested the update in writing. *Id.* Ms. Janzen responded:

> I am giving updates during appointments. I do not wish to represent someone who only will communicate with me in writing. This constitutes a breakdown in our communication that means continued representation IS not possible. I will review your case to see if there are any pressing matters. If not, I will withdraw immediately as your counsel.

*Id.* at 16. She added that "[p]rovided you give us the required information we will amend you[r] complaint with the details you give us before we withdraw." *Id.* Mr. Lauritzen again reminded Ms. Janzen that he had already uploaded the requested information but separately resubmitted it in case the Janzens had lost the ability to access their Dropbox folder. *Id.* at 16-17. On March 1, 2024, the Janzens filed an Amended Complaint that asserted claims on behalf of an additional 21 plaintiffs, including Mr. Lauritzen. ECF No. 12. Defendant moved to dismiss Plaintiffs' Amended Complaint on March 29, 2024. ECF No. 16.

---

[1] This email, as well as several other previously privileged emails referenced in this Opinion & Order, were initially provided for in camera inspection at the Janzens' request. *See* ECF No. 63. However, at the May 30, 2025 hearing on this matter, Mr. Lauritzen waived his attorney-client privilege, testified as to the contents of the emails, and provided them to Defense counsel who submitted them into the Court record. Accordingly, the Court cites to the Court record and, under LR 5-5(d)(3), directs that the documents submitted to it for in camera review shall be returned to the Janzens for their own records.

On April 19, 2024, Mr. Lauritzen received a voicemail from "James" from Rugged Law who indicated he was the "new point of contact person" and requested money for the filing fee. Riggs Decl. II Ex. 2 at 12; Oral Arg. Tr., May 30, 2025 ("Tr.") 71:24-72:5, ECF No 76. Mr. Lauritzen responded by emailing Ms. Janzen, expressing frustration about not receiving updates on his case and declining to send additional money. Riggs Decl. II, Ex. 2 at 11. Ms. Janzen responded later that day, cc'ing both James and Mr. Lauritzen, stating "we are most definitely cutting ties with him." *Id.* at 13.

### B. Individual Lawsuits

In June and July 2024, while Defendant's motion to dismiss was pending, Plaintiffs' counsel filed separate individual lawsuits on behalf of 11 Plaintiffs already named in this matter, including Mr. Lauritzen. Decl. of Kelly S. Riggs in Supp. of Def.'s Mot. for Sanctions Under 28 U.S.C. § 1927 ("Riggs Decl. I") ¶ 5, ECF No. 56. Mr. Lauritzen was unaware that lawsuit was being filed. Tr. 78:7-14. The next day, June 25, 2024, Mr. Janzen sent Mr. Lauritzen an email with the subject line "Notice of Intent to Withdraw" that read, in full—"[t]his email is to inform you that we will be withdrawing as your attorneys following service of your new complaint that we just filed due to your failure to pay the filing fee." Riggs Decl. II, Ex. 2 at 6. Mr. Lauritzen then sent the Janzens several emails requesting a bill for the filing fee. *Id.* at 7. Mr. Janzen responded that they were on vacation and would be in touch the following Monday. *Id.* at 6.

The individual cases (including the one filed on behalf of Mr. Lauritzen) were identical in substance to the claims already pending in this matter. Riggs Decl. I ¶ 5. On August 2, 2024, Defense counsel emailed the Janzens requesting conferral on the duplicative nature of the individual lawsuits. *Id.* ¶ 7. The Janzens did not respond, and several weeks later attempted to serve Defendant with the new individual Lauritzen complaint and several other individual lawsuits. *Id.* ¶¶ 7-8. On August 22, 2024, Defense counsel conferred with Ms. Janzen about

Page 3 — OPINION AND ORDER

Defendant's intent to move to dismiss the duplicative lawsuits, and Ms. Janzen said that she would oppose such motions. *Id.* ¶ 9. The Janzens were concerned that under other decisions in this District—*Wolfe v. Asante*, No. 1:23-cv-01671-MC, ECF 23 and *Bowerman et al. v. St. Charles Health Sys., Inc.*, No. 6:23-cv-01488-MC, ECF No. 39—they were required to file individual lawsuits or risk Plaintiffs' claims being dismissed as untimely. Decl. of Counsel in Supp. of Pls.' Resp. to Def.'s Mot. for Sanctions ("Janzen Decl.") ¶¶ 7-8, ECF No. 71.

On September 11, 2024, Defendant moved to dismiss the individual actions for which it had been served. Riggs Decl. I ¶ 10. In the following weeks, the Janzens and Defense counsel conferred several times regarding the Janzens' requests for extension of time to respond to Defendant's motion and the duplicative nature of the lawsuits. *Id.* ¶¶ 11-13. The Janzens ultimately agreed to dismiss the individuals from this action and proceed in the individual lawsuits instead. *Id.* ¶ 13. The Janzens asked Defense counsel to draft the stipulated dismissals, which Defense counsel did. *Id.* Before those were filed, however, Ms. Janzen told Defense counsel they were "changing gears" and decided to dismiss the individual lawsuits instead. *Id.* ¶ 14. The Janzens filed a notice of voluntary dismissal in the individual Lauritzen action on October 7, 2024. *Id.* ¶ 15. Mr. Lauritzen had no knowledge that his individual litigation had been voluntarily dismissed. Tr. 78:7-14. The Janzens also dismissed the remaining individual actions after "several follow-up conferrals." *Id.* ¶ 16.

C. **Resolution of Pleadings**

On December 9, 2024, the Court granted Defendant's Motion to Dismiss Plaintiffs' Amended Complaint. ECF No. 31. The Court also granted Plaintiffs leave to amend, and Plaintiffs filed their Second Amended Complaint on January 8, 2025. ECF No. 32. Because the Second Amended Complaint did not include any factual allegations related to several of the Plaintiffs (an error the Court identified in its Opinion & Order granting the Motion to Dismiss

the Amended Complaint), Defendant asked the Court for an order requiring Plaintiffs to file a Third Amended Complaint. ECF No. 33. Plaintiffs ultimately filed a Third Amended Complaint on February 13, 2025. ECF No. 35. Mr. Lauritzen was named in both the Second and Third Amended Complaints.

      **D.**      **Discovery**

In early 2025, the parties began engaging in discovery, serving discovery requests on one another in January and February. Riggs Decl. I ¶¶ 19, 23. The parties disputed whether and to what extent a phased discovery protocol should be adopted in the case. Defense counsel attempted substantive conferral with the Janzens to resolve their concerns about phased discovery, but the Janzens were non-responsive. *Id.* ¶¶ 25-27; Exs. 8, 9. Defendant ultimately filed a motion to adopt a phased discovery plan, and—after the Court granted two motions for extension of time—the Janzens filed a response on behalf of all Plaintiffs on March 27, 2025. ECF Nos. 38, 43-48. The Court granted Defendant's motion as to phased discovery on May 1, 2025. ECF No. 57.

On March 23, 2025, while briefing was underway on Defendant's motion for phased discovery, the Janzens' paralegal sent Mr. Lauritzen an email requesting documents and responses to discovery requests. Riggs Decl. II, Ex. 3 at 9. Mr. Lauritzen responded that he would work on those responses, and he exchanged several more emails with the Janzens' paralegal on that subject. *Id.* at 10-13. On April 7, 2025, Mr. Lauritzen wrote to the Janzens' paralegal that "[t]his is all surprising as last I heard [Ms. Janzen] and her husband threatened to not represent me for asking simple questions about the status of the case in email." *Id.* at 14. The Janzens' paralegal confirmed that there had been no withdrawal, and Mr. Lauritzen responded by asking "how much [he would] owe to withdraw." *Id.* Mr. Lauritzen added that "I believe it more

than fair that we split ways and I pay the filing fees and you leave it at that and I will not pursue a case against you." *Id.* at 14.

### E.      Mr. Lauritzen's Request for the Janzens' Withdrawal

On April 8, 2025, Mr. Lauritzen wrote another email to the Janzens' paralegal, this time including the Janzens as well as Defense counsel as recipients. *Id.* at 4. Mr. Lauritzen again reiterated that the Janzens had previously "made it clear they were withdrawing from representing [him] June of 2024," and that he was "supportive of their decision to withdraw as my council as they have been terrible." *Id.* Mr. Lauritzen concluded his email by stating "please bring my case and your representation to an end expeditiously as you have threatened me several times to do last year." *Id.* After a brief exchange with the paralegal, Ms. Janzen responded, again with all attorneys and Mr. Lauritzen cc'd, "Don't interact with him. Sarah needs to withdraw us." *Id.* at 5. Mr. Lauritzen replied, "I am requesting other representation and would like a copy of my file sent to my address . . . please. I will file my own dismissal request with the court or however my new council suggests." *Id.* at 6.

That same day, April 8, 2025, one of the Janzens' paralegals sent Defense counsel an email that stated that Mr. Lauritzen and another Plaintiff were "withdrawing" from the case and attached for Defense counsels' review stipulated notices of dismissal that would dismiss those Plaintiffs' claims with prejudice. Riggs Decl. I, Ex. 16. Defense counsel indicated that she could not agree to the stipulated dismissals in light of the emails from Mr. Lauritzen indicating that he no longer wished to be represented by the Janzens. *Id.* Following Mr. Lauritzen's email—and without moving to withdraw—the Janzens undertook several actions in the case on behalf of Plaintiffs, including conferrals regarding discovery and filing a motion for extension of time to respond to Defendant's discovery requests. Riggs Decl. I ¶¶ 35-43.

On April 21, 2025, counsel conferred on several topics, including the Janzens' continued representation of Mr. Lauritzen. *Id.* ¶ 40. During that conferral, Ms. Janzen relayed that she was working to understand the difference between dismissal and withdrawal but that she understood that Mr. Lauritzen wanted the Janzens to withdraw as his counsel. *Id.*

F.     **May 30, 2025 Hearing and Oral Ruling**

On April 30, 2025, and May 22, 2025, respectively, Defendant filed the instant motions based in part on the Janzens' continued representation of Mr. Lauritzen despite the Janzens' statements to him in February, April, and June 2024 that they would withdraw, and Mr. Lauritzen's explicit instruction that they withdraw as his attorney on April 8, 2025. Mr. Janzen testified in his Declaration that Mr. Lauritzen's April 8 email was "contradictory" because it was unclear as to whether Mr. Lauritzen wanted the Janzens to withdraw or wanted dismissal. Janzen Decl. ¶ 14. The Janzens took no action to withdraw from their representation of Mr. Lauritzen until the time set for hearing on May 30, 2025.

The Court scheduled Defendant's "Motion for Sanctions Under 28 U.S.C. § 1927 and this Court's Inherent Authority" for oral argument to take place on May 30, 2025. ECF No. 63. In light of the evidence and argument in the briefing about the status of the Janzens' representation of Mr. Lauritzen, the Court ordered the Janzens to provide Mr. Lauritzen with the briefing on the sanctions motions as well as notice and an invitation to attend the hearing. *Id.* Mr. Lauritzen attended the hearing and, after being cautioned as to the effect of his testimony on his attorney-client privilege, he waived that privilege and testified. Tr. 61:20-67:14. In addition to providing the relevant testimony set forth in the previous sections of this factual background, Mr. Lauritzen testified that any action the Janzens took on his behalf since April 8, 2025, were without his authorization. Tr. 79:15-22.

Following Mr. Lauritzen's testimony and oral argument, the Court ruled from the bench, finding that sanctions were appropriate under 28 U.S.C. § 1927 and the Court's inherent authority. Tr. 97:8-98:7. The Court also ordered that the Janzens were withdrawn from their representation of Mr. Lauritzen in light of his testimony on the record. ECF No. 68. Given the concerns about the status of the Janzens' relationships and communication with all other Plaintiffs named in the Amended Complaint, the Court found it appropriate to impose part of the requested sanctions prior to issuing a written ruling or waiting for briefing on the Rule 11 motion to conclude. Accordingly, the Court stayed this matter and appointed a special master to "confirm that Plaintiffs i) desire to maintain their claims as alleged in the Amended Complaint (ECF 35), ii) continue to authorize Plaintiffs' counsel to represent them in their claims, and iii) if so, whether Plaintiffs are receiving periodic updates from Plaintiffs' counsel on the status of litigation." ECF No. 78.

## STANDARDS

Defendant moves for sanctions under three authorities.

**I.    Section 1927**

28 U.S.C. § 1927 ("Section 1927") provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under Section 1927 "must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (citation omitted). "[B]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citation omitted).

## II. Inherent Authority

A federal court possesses "inherent powers," not conferred by rule or statute," to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-55 (1991)). To impose a sanction under its inherent powers, a court must find either: "(1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). Bad faith may be found where conduct during litigation was "done vexatiously, wantonly, or for oppressive reasons." *Id.* The court must make an explicit finding that the sanctioned party's conduct was tantamount to bad faith. *Id.*

## III. Rule 11

Rule 11(b) provides that, by presenting to a federal court a pleading or other paper, any party—including an unrepresented party—certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The court's authority to impose sanctions under Rule 11 is discretionary. *See* Fed R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction.") (emphasis added); *see also Gotro v. R & B Realty Grp.*, 69 F.3d 1485, 1488 (9th Cir. 1995) (noting that district courts have "wide discretion in determining whether Rule 11 sanctions are appropriate").

If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for

the violation." Fed. R. Civ. P. 11(b). An objective standard of reasonableness is applied to determinations of both frivolousness and improper purpose. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830-31 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Ultimately, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A–C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

## DISCUSSION

Defendant seeks sanctions for two categories of conduct: (I) the Janzens' continued representation of Mr. Lauritzen after their attorney-client relationship had been terminated; and (2) the Janzens' actions related to filing 11 duplicative lawsuits on behalf of individuals already named in this action.[2]

### I.   Litigation on Behalf of Mr. Lauritzen

Pursuant to Section 1927, Rule 11, and the Court's inherent authority, Defendant seeks sanctions for the Janzens' unauthorized litigation on behalf of Mr. Lauritzen. Defendant seeks attorney fees for time expended on Mr. Lauritzen's claims after the termination of Mr. Lauritzen's attorney-client relationship with the Janzens, as well as an order appointing a special master to ensure that all remaining Plaintiffs wish to remain in the case and represented by the Janzens. At the conclusion of oral argument on Defendant's "Motion for Sanctions Under 28 U.S.C. § 1927 and This Court's Inherent Authority," the Court found that the Janzens' conduct with respect to Mr. Lauritzen's claims was in bad faith and sanctionable under both authorities. Accordingly, the Court orally granted Defendant's motion and entered an order appointing a

---

[2] Defendant also notes Plaintiff's repeated failures to confer throughout this litigation. The Court discusses this behavior as relevant below, but does not find that it independently warrants sanctions under any of the three authorities.

special master. ECF Nos. 68, 78. The following portion of this opinion serves as the formal reasoning for that order and addresses Defendant's "Motion for Rule 11 Sanctions" that is based on the same conduct.

It is clear from the record that the Janzens continued to represent Mr. Lauritzen after their attorney-client relationship had ended. The Janzens twice told Mr. Lauritzen they were withdrawing as his attorneys in February and June 2024, though some of the language and actions of the Janzens and Mr. Lauritzen were equivocal on that point because those withdrawals hinged on future action or determinations by the Janzens. Indeed, Mr. Lauritzen exchanged emails with the Janzens' staff related to discovery in March and April 2025 and indicated that he may have interpreted the Janzens' comments as "threat[s]." Riggs Decl. II, Ex. 3 at 14. Considering the ambiguity, the Court does not find that the Janzens' representation of Mr. Lauritzen following their February and June 2024 emails was in bad faith.

However, on April 8, 2025, Mr. Lauritzen unequivocally instructed the Janzens to end their representation of him. Rule 1.16(a)(3) of the Oregon Rules of Professional Conduct requires that a lawyer "shall withdraw from the representation of a client if . . . the lawyer is discharged." Local Rule 83-7(a) requires attorneys admitted to practice in this district to "[b]e familiar and comply with the Oregon Rules of Professional Conduct." Despite Mr. Lauritzen's express instruction and the Janzens' obligations under the Oregon Rules of Professional Conduct and Local Rules, they did not withdraw. Instead, the Janzens continued to represent Mr. Lauritzen for another 52 days after their relationship was terminated, during which they actively engaged in discovery, conferral, and motion practice on his behalf. They did so even after Defendant filed these motions for sanctions specifically notifying them of their ongoing violation of their professional obligations.

Page 11 — OPINION AND ORDER

The Janzens contend that their continued representation of Mr. Lauritzen following April 8, 2025, was not in bad faith because they were confused about whether he wanted his case dismissed or wanted them to withdraw as counsel. At oral argument, Ms. Janzen added that "I simply want to protect this man. . . I wanted him to be able, Your Honor, to move on to another counsel with claims intact." Tr. 42:18-20. But that contention is undermined by the Janzens' sending Defense counsel a stipulation of dismissal on behalf of Mr. Lauritzen after receiving the April 8, 2025 email. *See* Riggs Decl. I, Ex. 16. If the Janzens were confused and wanted to make sure they understood Mr. Lauritzen's intentions before taking action, it defies reason that they would respond to that confusion by attempting to take the most permanent and harmful step they could with respect to Mr. Lauritzen's case.

Moreover, the Janzens' professed confusion lacks credibility. Even if Mr. Lauritzen's original statement "Please bring my case and your representation to an end expeditiously as you have threatened me several times to do last year," were ambiguous (although this Court finds it is not ambiguous), he subsequently clarified that he would "file [his] own dismissal request with the court or however my new council suggests." Riggs Decl. II, Ex. 3 at 4-6. Whatever the confusion the Janzens may have originally had about whether Mr. Lauritzen wanted his case dismissed, it was clear from the record that Mr. Lauritzen no longer wanted the Janzens representing him as of April 8, 2025. To the extent Mr. Lauritzen may have *also* wanted his case dismissed, that was no longer the Janzens' responsibility.

This is not the first time that the Janzens have continued to represent a client without authorization. In another case in this district, Chief Judge McShane ordered the Janzens to certify in writing that they communicated the status of that case to the plaintiffs, and Mr. Janzen subsequently filed a "declaration of compliance" in which he swore that he contacted the

plaintiffs and "obtain[ed] their informed consent for continued representation." *Bowerman et al. v. St. Charles Health Sys., Inc.*, No. 6:23-cv-01488-MC, ECF Nos. 41, 59. But several days later, the court received an email from one of the plaintiffs in that case in which she explained:

> This is the second time that I have found myself as a named Plaintiff in a discrimination claim under Title VII of the Civil Rights Act and Oregon Law against former employer, Defendant St. Charles Health System, Inc. by way of websites. … Any certification that [the Janzens] represent me in this matter is false. I just learned today that an Appeal was filed on my behalf without my knowledge or permission."

*Bowerman et al. v. St. Charles Health Sys., Inc.*, No. 6:23-cv-01488-MC, ECF No. 62.

The record here compellingly establishes the Janzens' bad faith conduct. Sanctions are appropriate under all three authorities. First, under Section 1927, the Court finds that an award of attorney fees is appropriate because the Janzens' unauthorized litigation on behalf of Mr. Lauritzen multiplied the proceedings unreasonably and vexatiously, caused Defendant to incur fees, and was in bad faith. With respect to bad faith, "knowing or reckless conduct meets this standard" under Section 1927. *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991). While there is some ambiguity regarding when the Janzens' attorney-client relationship with Mr. Lauritzen may have ended, the record is clear that as of April 8, 2025, the Janzens understood Mr. Lauritzen had asked them to withdraw, and knowingly and recklessly continued to pursue litigation on his behalf, multiplying proceedings and causing Defendant to incur fees. The Court therefore awards Defendant all attorney fees incurred in defending against Mr. Lauritzen's claims after April 8, 2025, to be paid by the Janzens. This shall include all fees specifically attributable to Mr. Lauritzen—as well as a share of non-attributable fees proportional to the number of Plaintiffs that remained in the case—between April 8, 2025 and May 30, 2025. *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) (a

Page 13 — OPINION AND ORDER

district court may use an apportioned percentage where "it would be impossible to determine with mathematical precision the fees and costs generated only by [one plaintiff].")

Sanctions are also granted under the Court's inherent authority because the Janzens' continued litigation of Mr. Lauritzen's claims goes beyond recklessness and have been made in bad faith. *See id.* at 1219 ("Recklessness suffices for § 1927 sanctions, but sanctions imposed under the district court's inherent authority require a bad faith finding"). The Janzens' acknowledgment that they knew Mr. Lauritzen no longer wanted them representing him, their failure to withdraw even after these motions were filed, and their implausible explanation for their failure to withdraw—combined with their history of dishonesty related to the same type of conduct in the *Bowerman* case—is sufficient for this Court to conclude that the Janzens' continued representation of Mr. Lauritzen was made in bad faith. Pursuant to its inherent authority, the Court has already ordered the Janzens to pay $5,000 into the Court registry for a special master to contact all Plaintiffs in this case to confirm that they wish to maintain their claims, wish to continue to be represented by the Janzens, and whether they are receiving periodic updates from the Janzens on the status of litigation. *See* ECF Nos. 68, 78. This sanction is necessary to ensure that the Janzens' unauthorized representation is limited to Mr. Lauritzen.

Finally, the sanctions identified above are also appropriate under Rule 11. The Janzens filed a pleading (a Motion for Extension of Time to Respond to Defendant's Discovery Requests, ECF No. 52) on behalf of Mr. Lauritzen and the other Plaintiffs on April 14, 2025, after the date Mr. Lauritzen explicitly terminated their attorney-client relationship. In signing that pleading, the Janzens violated Rule 11 by falsely certifying that it was not being presented for an improper purpose. As benign as a motion for extension may seem, it cannot have been filed for a proper purpose if the Janzens expressly did not have authority from one of their clients to file it.

Defendant served its "Motion for Rule 11 Sanctions" on April 30, 2025, and the motion specifically identified the offending pleading. *See* Riggs Decl. I ¶ 43. Yet the Janzens did not cure the issue by withdrawing or correcting that filing before the expiration of the 21-day safe harbor period provided in Rule 11(c)(2) or, indeed, at all. Rule 11 allows for sanctions that "suffice[] to deter repetition of the conduct or comparable conduct by others similarly situated." *See* Fed. R. Civ. P. 11(c)(4). The Court finds that both sanctions already ordered under Section 1927 (attorney fees) and the Court's inherent authority ($5,000 for a Special Master) are also appropriate under Rule 11 to deter continued unauthorized filings and to ensure that the Janzens have not and will not engage in similar conduct with respect to the remaining Plaintiffs.

**II.     Duplicative Lawsuits**

Pursuant to Section 1927, Rule 11, and the Court's inherent authority, Defendant also seeks sanctions related to the Janzens' filing of 11 separate and duplicative individual lawsuits filed on behalf of Plaintiffs in this case.

There is no question that the filing of individual and substantively identical lawsuits for the Plaintiffs already named in this action was prohibited by Ninth Circuit precedent. *See Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) ("Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (internal quotations and citation omitted). Nevertheless, the Janzens contend that they did not act in bad faith in filing these actions because they believed that several rulings by Chief Judge McShane required them to file separate lawsuits for some Plaintiffs. Janzen Decl. ¶¶ 7-8. Even accepting that as true, however, it is not the sole act of filing the individual lawsuits that is the basis of Defendant's motion. Rather, it was the Janzens' ongoing failures to timely and meaningfully confer on this issue that resulted in substantial time being unnecessarily expended by Defendant in responding to patently

frivolous claims. Despite Defendant's insistence that the Janzens resolve the claim-splitting issue by dismissing this action or the others, the Janzens declined to do so, forcing Defendant to file motions to dismiss in the individual cases. Only once those motions were filed did the Janzens propose a way forward, yet still they inexplicably changed gears and caused Defendant to incur additional fees. These cases persisted for months and required persistent conferral attempts by Defendant before they were ultimately dismissed.

This is far from the first time the Janzens have failed to meaningfully confer or otherwise carry out their obligations under the Federal and local rules. Several other judges have admonished the Janzens or imposed fines on them for such behavior. *See, e.g.*, *Prakash v. Or. Health and Sci. Univ.*, No. 3:23-cv-01653-IM, ECF No. 20 (Apr. 30,2024) (collecting cases and explaining that the Janzens have a "history of flouting the deadlines and rules of the District of Oregon"); *Burns v. Asante Rouge Reg'l Med. Ctr., LLC*, 2025 WL 965788, at *1 (D. Or. Mar. 31, 2025) ("The Court considers Plaintiffs' counsel's late evening attempt to confer with opposing counsel on the day of the deadline as negligent and bordering on bad faith"); *Riser v. St. Charles Health Sys., Inc.*, 2025 WL 746011, at *4 (D. Or. Mar. 7, 2025) (Finding bad faith where the Janzens repled dismissed claims in violation of a Court order, violated LR 15-1(b) by failing to file a red-lined copy of their amended complaint, and failed to correct the issue when warned in conferral by defense counsel); *Zavyalov v. Legacy Health*, 3:25-cv-00198-AB, ECF No. 14 (entering show cause order and noting that "despite [the court's notice] that continued failures to follow Court orders and cooperate with opposing counsel and Caroline Janzen's assurances to the Court that the firm was 'committed to improvement' and 'aggressively curing our deficiencies, Plaintiff's counsel have continued to violate their professional obligations"). Even within this case—and even setting aside the conduct specific to the duplicative lawsuits—

the record is replete with evidence of the Janzens' repeated failures to timely or meaningfully confer. *See* Riggs Decl. I ¶¶ 17-30 (detailing conferral difficulties with the Janzens related to discovery); Suppl. Decl. of Kelly S. Riggs in Supp. of Def.'s Mot. for Sanctions Under 28 U.S.C. § 1927 ¶¶ 2-10, ECF No. 65 (detailing inadequate conferral and failures of discovery obligations by the Janzens); Decl. of Nicholas D. Lauren in Supp. of Def.'s Mot. for Sanctions Under 28 U.S.C. § 1927 ¶¶ 2-7, ECF No. 66 (same).

The Court can only conclude that the Janzens' continuation of this pattern of disregard for timely and meaningful conferral here is in bad faith. Despite repeated warnings from other judges in this district about their obligations under Federal and local rules, the Janzens here filed frivolous lawsuits in clear violation of Ninth Circuit law, and then failed to correct the issue for months until Defendant had already expended significant time and effort attempting to confer with the Janzens on the issue and defending the duplicative lawsuits. Under the totality of these circumstances, the Court finds the Janzens' conduct sufficient to establish "bad faith" under the standards as applicable to Section 1927[3] and the court's inherent power. Under both authorities, the Court orders the Janzens to pay all attorney fees incurred by Defendant in defending the individually filed actions that were duplicative of claims by Plaintiffs in this case.

Although Defendant also moved for sanctions under Rule 11, that rule does not provide an additional basis for imposing sanctions for this conduct. As already referenced above, Rule 11 includes a safe harbor provision, under which a Rule 11 motion for sanctions may not be filed

---

[3] The Court recognizes that the Ninth Circuit has held that "Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings." *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.). However, because Defendant contends that the complaints in the separate lawsuits were duplicative of the *Pickens* Complaint, the "initial pleading" at issue here is the *Pickens* Complaint, not the complaints in the individual lawsuits.

until 21 days after it is served. Fed. R. Civ. P. 11(c)(2). That period gives the attorney served with the motion 21 days to cure or withdraw the pleading at issue. *Id.* Here, however, the duplicative lawsuits had already been dismissed at the time the Rule 11 motion was served. Without any opportunity to cure, Rule 11 is not a proper authority for sanctioning the already-dismissed duplicative lawsuits. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("Given the 'safe harbor' provisions … , a party cannot delay serving its Rule 11 motion until conclusion of the case"); *see also Barber v. Miller*, 146 F.3d 707, 710-11 (9th Cir. 1998) (Rule 11 sanctions were impermissible where the offending complaint had already been dismissed at the time the Rule 11 motion was served because the offending party did not have an opportunity to cure as required by the safe harbor provision).

### III.     Attorney Fees Incurred in Bringing these Motions

Having found that the Janzens' conduct is sanctionable, the Court further orders that the Janzens are responsible for all attorney fees Defendant incurred in bringing its motions for sanctions based on the findings set forth above.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Sanctions Under 28 U.S.C. § 1927 and this Court's Inherent Authority (ECF No. 55) and Defendant's Motion for Rule 11 Sanctions (ECF No. 62) are GRANTED. Defendant shall, within 30 days of this order, file a Motion for Attorney Fees consistent with the sanctions awarded in this Opinion & Order. Plaintiffs' response is due 14 days after that motion is filed, and Defendant's reply is due 14 days after Plaintiffs' response.

DATED this <u>19th</u> day of December 2025.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (he/him)<br>
United States District Judge